

**FILED**

OCT 30 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 632 |
| v. | Violations: Title 18, United States Code, Sections 1028A and 1347 |
| INESSA KATSNELSON, a/k/a "Inessa Blinov," a/k/a "Inessa Danuchevsky," aka "Inna," | |
| MAYA YAKUBOVICH, | JUDGE COLEMAN |
| YAROSLAVA BOYKO, a/k/a "Yana Boyko," | MAGISTRATE JUDGE VALDEZ |
| TETYANA VORONKINA, a/k/a "Tanya Voronkina," and | |
| VIKTOR DANCHUK | |

## COUNTS ONE THROUGH TWENTY

The SPECIAL JUNE 2018 GRAND JURY charges:

1.     At times material to this Indictment:

a.     Defendant INESSA KATSNELSON, a/k/a "Inessa Blinov," a/k/a "Inessa Danuchevsky," a/k/a "Inna," was a personal trainer and singer who worked out of Gym A located in Northbrook, Illinois. KATSNELSON controlled G.I.N.A. Enterprises, Inc., a/k/a "Inessa Music," and G.I.N.A. Fitness, Inc., and KATSNELSON controlled bank accounts in the names of these entities.

b.     Defendant MAYA YAKUBOVICH was a medical claims biller who controlled Mayak, Inc., Mayak Consulting, and MY Consulting, Inc., and YAKUBOVICH controlled bank accounts in the names of these entities.

c.     Defendant YAROSLAVA BOYKO, a/k/a "Yana Boyko," controlled Prime Health Medical and Rehab Center, Ltd. (Prime Health) and Health Choice

Medical Center, Ltd. (Health Choice), which purported to provide health care services, including physical therapy and rehabilitation services, and operated out of already established clinics at Chicago area locations, including Glenview, Northfield, Wheeling, Buffalo Grove, and Des Plains. BOYKO controlled bank accounts in the names of Prime Health and Health Choice. BOYKO also controlled B&Y Services Ltd., and BOYKO and YAKUBOVICH controlled a bank account in that entity's name.

  d. Physician A was a licensed physician in the State of Illinois and was paid by Prime Health and Health Choice for work purportedly performed at a clinic located in Buffalo Grove.

  e. Defendant TETYANA VORONKINA, a/k/a "Tanya Voronkina," was a medical claims biller.

  f. Defendant VIKTOR DANCHUK was a licensed massage therapist in the State of Illinois.

  g. Co-Schemer Beatta Kabbani was a licensed physical therapist in the State of Illinois and controlled MedCare Medical Group Co. (MedCare), an outpatient physical therapy clinic located in Northfield and, later, in Glenview. Kabbani also controlled bank accounts in the name of MedCare. Prior to opening MedCare in approximately 2010, Kabbani worked at an outpatient physical therapy clinic owned by Kabbani's spouse, MedCare Inc., in Glenview and Northfield.

2

h.    Physical Therapist A was a licensed chiropractor in Illinois who resided in Poland as of approximately February 2013.

i.    Co-Schemer Chiropractor B was a licensed chiropractor in the State of Illinois and controlled Clinic B, a chiropractic clinic located in Prospect Heights, Illinois. Chiropractor B also controlled bank accounts in the name of Clinic B.

j.    Physician C was a licensed physician in the State of Illinois who controlled Clinic C in Wheeling, which purported to provide health care services, including internal medicine services.

k.    Sphinx Services, Inc. was a purported provider of health care services, including internal medicine services, and was located at Gym A in Northbrook.

l.    Physician D was a licensed physician in the State of Illinois.

m.    Blue Cross Blue Shield of Illinois, Aetna Insurance, UnitedHealthcare, Cigna, Humana, State Farm Insurance Company, Hanover Insurance Company, Allmerica Financial Alliance Insurance, Wawanesa General Insurance Company, and others (collectively, the "Insurance Companies"), were health and auto insurance companies that provided coverage for patients that purportedly sought treatment at the above-described clinics (collectively, "the Clinics"). The Insurance Companies offered and administered health care benefit programs within the meaning of Title 18, United States Code, Section 24(b).

3

n.     The Clinics were required to submit certain claim information to the Insurance Companies for reimbursement for covered services provided to patients. Required claim information included the claimant's name; his/her insurance number; his/her date of birth; the health care services provided; the location where the health care services were provided; the name and National Provider Identifier of the medical provider, such as the chiropractor or therapist, providing the health care services; and the charge for each health care service provided.

o.     The Insurance Companies paid for services that were covered by a patient's insurance policy and for which a representation had been made that the services were actually provided to patients. The health insurance companies offered deductible programs, whereby a patient paid for health care services up to a certain dollar amount, after which the patient's health insurance paid for covered services.

p.     The Insurance Companies paid approved claims for covered services either by check sent by United States mail or by electronic direct deposit.

2.     Beginning no later than 2006, and continuing through approximately October 2018, at Buffalo Grove, Northfield, Prospect Heights, Northbrook, Wheeling, Des Plaines, and Glenview, in the Northern District of Illinois, Eastern Division, and elsewhere,

INESSA KATSNELSON, a/k/a "Inessa Blinov," a/k/a "Inessa Danuchevsky," a/k/a "Inna,"
MAYA YAKUBOVICH,
YAROSLAVA BOYKO, a/k/a "Yana Boyko,"
TETYANA VORONKINA, a/k/a "Tanya Voronkina," and
VIKTOR DANCHUK,

4

defendants herein, along with Co-Schemers Beatta Kabbani and Chiropractor B, and others, participated in a scheme to defraud a health care benefit program, namely the Insurance Companies, and others, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits and services, which scheme is further described in the following paragraphs.

3.      It was part of the scheme that defendants KATSNELSON, YAKUBOVICH, BOYKO, VORONKINA, and DANCHUK, together with Co-Schemers Kabbani and Chiropractor B, and others, fraudulently obtained at least approximately $6,500,000 from the Insurance Companies by submitting, and causing to be submitted, fraudulent claims for payment to the Insurance Companies that falsely represented that certain health care services were provided to patients at the Clinics, knowing that those services were not actually provided.

4.      It was further part of the scheme that defendants KATSNELSON and YAKUBOVICH recruited their friends, family, and associates to permit their health and auto insurance companies, on behalf of themselves and other relatives, to be falsely billed by the Clinics for services that the complicit patients and their relatives did not receive, and in return the complicit patients received benefits, including: insurance deductibles exhausted at no out-of-pocket expense; and, free services including gym training sessions and massages. KATSNELSON, YAKUBOVICH, and

the complicit patients knew that the health care services identified in the fraudulent claims had not been provided.

5.     It was further part of the scheme that defendant DANCHUK, along with defendants VORONKINA and YAKUBOVICH, and Co-schemer Beatta Kabbani, submitted, and caused to be submitted, false claims to health insurance companies for physical therapy and other health care services purportedly provided to patients by other providers, knowing that the health care services identified in the claims had not been provided.

6.     It was further part of the scheme that defendants KATSNELSON, YAKUBOVICH, BOYKO, and VORONKINA, together with Co-Schemers Kabbani and Chiropractor B, and others including employees of Clinic A and Clinic B, created, and caused to be created, medical records that falsely represented that patients received health care benefits on certain dates by certain providers to substantiate the fraudulent claims, knowing that the health care benefits in the medical records had not been provided to the patients.

7.     It was further part of the scheme that defendants KATSNELSON, YAKUBOVICH, BOYKO, and VORONKINA, together with Co-Schemer Kabbani, and others, at times used the names and other identifying information of certain individuals, including Physician D and other medical providers, without their knowledge or authorization to create, and cause the creation of, fraudulent claims

submitted by the Clinics to the Insurance Companies when, in fact, the defendants and Co-Schemer Kabbani knew that the claims were false.

8.   It was further part of the scheme that defendants KATSNELSON, YAKUBOVICH, BOYKO, VORONKINA, and DANCHUK, together with Co-Schemers Kabbani and Chiropractor B, typically deposited, and caused to be deposited, the money they received from the Insurance Companies for services that were not actually provided into corporate bank accounts in the names of the Clinics.

9.   It was further part of the scheme that defendants KATSNELSON, YAKUBOVICH, BOYKO, VORONKINA, and DANCHUK, together with Co-Schemers Kabbani and Chiropractor B divided, and caused the division of, the payments made by the Insurance Companies for services that were not rendered.

10.   It was further part of the scheme that defendants KATSNELSON, YAKUBOVICH, BOYKO, VORONKINA, and DANCHUK, together with Co-Schemers Kabbani and Chiropractor B, and others, concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

11.   On or about the dates set forth below, at Buffalo Grove, Northfield, Prospect Heights, Northbrook, Wheeling, Des Plaines, and Glenview, in the Northern District of Illinois, Eastern Division, and elsewhere,

INESSA KATSNELSON, a/k/a "Inessa Blinov," a/k/a "Inessa Danuchevsky," a/k/a "Inna,"
MAYA YAKUBOVICH,
YANA BOYKO,

TETYANA VORONKINA, a/k/a "Tanya Voronkina," and
VIKTOR DANCHUK,

defendants herein, did knowingly and willfully execute and attempt to execute the

above-described scheme by submitting and causing to be submitted claims to health

care benefit programs, namely, the Insurance Companies, for health care services

that were not actually provided:

| COUNT | CLAIM DATE RECEIVED | CLAIM DATE OF SERVICE | CLINIC | PROVIDER | BENEFIT PROGRAM | PATIENT | DEFENDANTS |
|---|---|---|---|---|---|---|---|
| 1 | 1/20/2014 | 12/3/2013 | Prime Health | Physician A | BCBSIL | E.G. | Blinov Yakubovich Boyko |
| 2 | 1/31/2014 | 1/24/2014 | Clinic B | Chiropractor B | BCBSIL | K.K. | Blinov Yakubovich |
| 3 | 2/24/2014 | 11/1/2013 | Clinic B | Chiropractor B | BCBSIL | K.K. | Blinov Yakubovich |
| 4 | 3/10/2014 | 3/1/2014 | Health Choice | Physician A | BCBSIL | M.B. | Blinov Yakubovich Boyko |
| 5 | 7/7/2014 | 6/24/2014 | Prime Health | Physician A | BCBSIL | D.K. | Blinov Yakubovich Boyko |
| 6 | 7/7/2014 | 5/30/2014 | Prime Health | Physician A | BCBSIL | A.L. | Blinov Yakubovich Boyko |
| 7 | 4/20/2015 | 3/24/2015 | Clinic B | Chiropractor B | BCBSIL | Inessa Blinov | Blinov Yakubovich |
| 8 | 4/20/2015 | 3/31/2015 | Clinic B | Chiropractor B | BCBSIL | Inessa Blinov | Blinov Yakubovich |
| 9 | 5/13/2015 | 5/13/2014 | Health Choice | Physician A | BCBSIL | A.E. | Blinov Yakubovich Boyko |
| 10 | 6/11/2015 | 3/24/2015 | MedCare | Physical Therapist A | BCBSIL | Inessa Blinov | Blinov Voronkina |
| 11 | 6/11/2015 | 3/31/2015 | MedCare | Physical Therapist A | BCBSIL | Inessa Blinov | Blinov Voronkina |
| 12 | 9/3/2015 | 2/23/2015 | Clinic B | Chiropractor B | BCBSIL | E.R. | Blinov Yakubovich |

| 13 | 9/5/2015 | 5/15/2015 | Clinic B | Chiropractor B | BCBSIL | A.E. | Blinov Yakubovich |
|---|---|---|---|---|---|---|---|
| 14 | 2/9/2016 | 12/30/2015 | Medcare | Kabbani | BCBSIL | R.N. | Yakubovich Danchuk |
| 15 | 3/21/2016 | 2/29/2016 | MedCare | Kabbani | BCBSIL | A.K. | Blinov Yakubovich |
| 16 | 7/26/2016 | 2/29/2016 | MedCare | Kabbani | State Farm Insurance Company | A.K. | Blinov Yakubovich |
| 17 | 10/10/2016 | 9/30/2016 | MedCare | Physical Therapist A | BCBSIL | J.K. | Yakubovich Danchuk |
| 18 | 8/11/2017 | 3/14/2017 | Clinic C | Physician C | Wawanesa General Insurance Company | Inessa Blinov | Blinov |
| 19 | 5/30/2018 | 5/9/2018 | Sphinx | Physician D | BCBSIL | A.E. | Blinov |
| 20 | 7/3/2018 | 5/1/2018 | Sphinx | Physician D | BCBSIL | E.E. | Blinov |

9

## COUNT TWENTY-ONE

The SPECIAL JUNE 2018 GRAND JURY further charges:

On or about May 30, 2018, at Northbrook, in the Northern District of Illinois, Eastern Division, and elsewhere,

INESSA KATSNELSON, a/k/a "Inessa Blinov," a/k/a "Inessa Danuchevsky," a/k/a "Inna,"

defendant herein, did knowingly use without lawful authority a means of identification of another person, namely, the name and National Provider Identifier for Physician D, during and in relation to a felony, namely a violation of Title 18, United States Code, Section 1347, as alleged in Count Nineteen of the Indictment;

In violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT TWENTY-TWO

The SPECIAL JUNE 2018 GRAND JURY further charges:

On or about July 3, 2018, at Northbrook, in the Northern District of Illinois, Eastern Division, and elsewhere,

INESSA KATSNELSON, a/k/a "Inessa Blinov," a/k/a "Inessa Danuchevsky," a/k/a "Inna,"

defendant herein, did knowingly use without lawful authority a means of identification of another person, namely, the name and National Provider Identifier for Physician D, during and in relation to a felony, namely a violation of Title 18, United States Code, Section 1347, as alleged in Count Twenty of the Indictment;

In violation of Title 18, United States Code, Section 1028A(a)(1).

11

## **FORFEITURE ALLEGATION ONE**

The SPECIAL JUNE 2018 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1347, as set forth in this Indictment,

INESSA KATSNELSON, a/k/a "Inessa Blinov," a/k/a "Inessa Danuchevsky," a/k/a "Inna,"

defendant herein, shall forfeit to the United States of America any property that constitutes and is derived, directly and indirectly, from the gross proceeds traceable to the commission of the offense, as provided in Title 18, United States Code, Section 982(a)(7).

2.     The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $6,500,000.

3.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

## **FORFEITURE ALLEGATION TWO**

The SPECIAL JUNE 2018 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1347, as set forth in this Indictment,

### MAYA YAKUBOVICH,

defendant herein, shall forfeit to the United States of America any property that constitutes and is derived, directly and indirectly, from the gross proceeds traceable to the commission of the offense, as provided in Title 18, United States Code, Section 982(a)(7).

2.     The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $4,460,000.

3.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

13

## FORFEITURE ALLEGATION THREE

The SPECIAL JUNE 2018 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1347, as set forth in this Indictment,

YAROSLAVA BOYKO, a/k/a "Yana Boyko,"

defendant herein, shall forfeit to the United States of America any property that constitutes and is derived, directly and indirectly, from the gross proceeds traceable to the commission of the offense, as provided in Title 18, United States Code, Section 982(a)(7).

2.      The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $2,300,000.

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

14

## FORFEITURE ALLEGATION FOUR

The SPECIAL JUNE 2018 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1347, as set forth in this Indictment,

TETYANA VORONKINA, a/k/a "Tanya Voronkina,"

defendant herein, shall forfeit to the United States of America any property that constitutes and is derived, directly and indirectly, from the gross proceeds traceable to the commission of the offense, as provided in Title 18, United States Code, Section 982(a)(7).

2.     The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $1,840,000.

3.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

## **FORFEITURE ALLEGATION FIVE**

The SPECIAL JUNE 2018 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1347, as set forth in this Indictment,

### VIKTOR DANCHUK,

defendant herein, shall forfeit to the United States of America any property that constitutes and is derived, directly and indirectly, from the gross proceeds traceable to the commission of the offense, as provided in Title 18, United States Code, Section 982(a)(7).

2.     The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $360,000.

16

3. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY